Good morning, counsel. Good morning. The police, the court, and my good friend and colleague, Mr. Lacey. My name is Jerry Moberg. I'm an attorney from Ephrata, Washington, and I'm here representing Grant County. When this case started, all the parties agreed that Ms. Lane was a key employee and that the So there was no job for her to come back to when she went on FMLA leave, and she was aware of that. And the county made a proper determination of economic harm. Counsel? Yes. What you just said is where I run into a problem. As I understand the law in this, the county, in order to eliminate her it's letter to her, say what they are, and it didn't. Well, the letter, I guess I partly disagree with that. It has to notify her that the county would have an economic harm if she was reinstated. More than an economic harm. I can't remember the exact buzzwords, but it's something like a devastating economic harm. A grievous economic harm. I mean, any time you pay anyone, it's an economic harm to the enterprise. So Congress obviously meant to distinguish, and I couldn't see where the county showed any grievous economic harm, and it didn't look as though it really could show it. For one thing, it And for another, her tiny chunk is largely funded by money that doesn't come from the county taxpayers. So it looks as though the county did not satisfy the statutory requirement that in its letter to her it showed grievous economic harm and could not have. Why isn't that the end of the story? Well, just a minute, counsel. I So, well, for a couple of reasons. First of all, the grievous economic harm is that the position was eliminated, and to keep her there and pay her over $100,000 when you consider benefits for a job that no longer exists would be at least as much grievous economic harm as the court recognized in the Marriott case, where Marriott, which is a big company that's got big hotels all over Marriott, said it was grievous economic harm if you had to hire two housekeepers at $40,000 a year when you only needed one. And I think that the county made that determination, that there was grievous economic harm. Interestingly, when the trial judge granted the summary judgment on this claim before he reconsidered, he found all of the requirements were met, and that the letter doesn't require that you explain to the employee how you arrived at the grievous economic harm, only that there was grievous economic harm. I thought you did have to explain it. Let me see the language here that I was thinking of. Well, it's part of the jury instructions that there are certain things that have to be included in the notice, one of which that defendant promptly notified plaintiff of the intent to deny restoration to the same or equivalent position, explaining the basis for the employer's finding, giving a reasonable time to return to work. That's an element, right? And I think that the district judge, in looking at it over again, said, wait a minute, I don't know that this instruction really fits. But let me set that aside for a moment and talk about the question of waiver. Because as I read this record, both sides agreed with the district court to take out the jury instructions. So even assuming that there's a defense there, why isn't it waived? I know that there's an explanation in the briefs as to the circumstances under which that concession was made. But I can't find in the record where defense counsel, even with the final stage of settling the instructions, ever asked the district court, well, if you're going to talk about restoration, then we want jury instruction, I think it was 2.3, put back in. So, in fairness to the district judge, once counsel has conceded, take it out, your honor, and didn't ask for it to be put in, how do we fault the district judge for that? And so, the county has been consistent throughout. But that's not what the rest of the jury instructions were about. They gave the entire issue to the jury, right? It wasn't limited in that way. In all due respect, they didn't give the entire issue to the jury. That's the problem. The instruction that the court gave did not provide the jury with an opportunity to know that the county had no duty to restore her to the position if it had met the requirements. But that's because county's counsel said, let's leave that part out. Well, no, not exactly. What happened was, at the beginning of the trial, and I was the trial attorney as well, at the beginning of the trial, we were going to talk about motions eliminating. And the court came out, and despite its prior ruling, said that its view had evolved, and then said we should take out 2.3. My friend and colleague, Mr. Lacey, said, no, Judge, we can't do that, because the jury has to decide the economic harm issue. And I agreed it shouldn't be taken out. Later on, in the motions eliminate, the court said, well, but I think it should be taken out, Mr. Lacey agreed. And what I said was that if you take out the entire restoration claim, so that the only real claim is, did the county consider as a negative factor her FMLE leave when it decided to eliminate the position, that I had no problem with that. Where did you say that in the record? In the motions eliminate, I had said that... Because I didn't see any statement nearly as clear as what you just said. Well, it may not be that clear, what I was saying. I don't think it's clear enough to preserve the issue. Well, but the issue, you know, as the case law says, if the court understands the issue, that is, what the party's positions are, that a party may not articulate that. But I think the court thought that your position was that you should drop instruction 2.3, because you said that you should drop, I mean, you said, but the whole key employee thing, I think it saves us time, saves confusion to the jury, let's get it out. So that's what the judge thought was your position. But the key employee thing is that whole restoration issue. But that's not what you said. Everyone was talking about 2.3, and the judge had made clear that he was going, he or she was going to leave, he was going to leave the rest, 12.1, I mean, all the rest was staying. But the rest goes to the interference claim. The rest goes to, because he didn't have a question of economic harm, he didn't ask the jury to determine the adequacy of the notices. The 2.2 was an issue about whether the county would have made the same decision had it, had she not been on leave. That goes to the interference claim. So that the county's position from day one had been that the restoration claim should be out, because the county had no duty to restore it to a position that didn't exist. 2.4 was staying. 2.4 is about restoration. 2.4 is about restoration. At that point, the exceptions that I made at the time that we took exceptions to jury instructions were to the entire 2 section. In other words, at that point, from a practical standpoint. So where in the record did you say that the entire instruction 2 needs to leave? I accepted to the court's instructions in number 2. Where? On what page? I made a reference to that in the brief. I don't know if they have that handy. I think if you meant to. I thought it was quite different, actually. The way I read the record, once the judge changed his mind on summary judgment, everything was open. An instruction was originally sought, and then both parties agreed that the instruction could properly be deleted. And it was about as simple as that. Now, it may be that those were not the intentions of the parties, or at least not the intention of the county. But reading the record as a stranger to it, it seems to be how it reads. And I think that's why we're at loggerheads here and trying to discuss this. It may well be. And as I indicated in my brief, I may have been unartful in explaining my position. But at that time, you have to understand, the judge had already pretty much made up his mind about what he was doing. You don't have to understand a whole lot. Jury verdicts get a lot of deference. I understand. But he had made it clear that it was his belief that at least the key employee defense to the restoration should be removed. And I never agreed to. Who cares what his belief was? What we care about is, was an instruction given? No. Did the parties agree it did not have to be given? Yes, so far as the record reveals. So there's no instruction. And then I looked at and I found the reg that I was remembering vaguely before. It's 825.219A. And it says that the employer must give written notice to the employee at the time the employee gives notice of the need for FML leave. And the employer must also fully inform the employee of the potential consequences with respect to reinstatement. They did that. And maintenance of health benefits. If the employer should determine that substantial and grievous economic injury to the employer's operations will result. However, an employee who fails to provide such timely notice will lose its right to deny restoration, even if substantial and grievous economic injury will result. It looks as though the letter didn't do what it had to. And then when I look at the substantial and grievous economic injury in 825.218, it means either it threatens the economic viability of the firm or it would cause substantial long-term economic injury that is lesser than threatening the economic viability of the firm. I don't understand how the county can get under this safety umbrella. Well, the county made its determination and the notice only has to advise the employee that the county had made that determination, not the basis of the determination. So the court in summary judgment had determined that the notice was adequate. I thought it did have to give the basis, and we don't defer to the district judge on this, so it doesn't matter what the district judge thought at one time or another. I guess the bottom line for me is this. I think that the instructions to the jury on the issue of the key employee defense were clear air. I don't think that the case ought to be resolved on the basis that somehow the county, who had maintained that defense throughout, had waived that important viable defense to this case. I think the case is best resolved by reinstating the summary judgment of the trial court. The district judge was very candid that his thinking had evolved over time, and it went to jury trial, as my colleague pointed out. That's entitled to some deference. Let me ask you this. As I read the discussions that you had with the district judge during the settling of the jury instructions, the motion limiting hearing that you're talking about, you had settled on a theory that this was not really an FMLA case, and as you explained to the district judge, that's why you were comfortable taking out the key employee defense, because it might cause some confusion that the county was going to go with the theory that this was not even an FMLA case at all, that the county would have made the same decision anyway, and that her decision to go out on leave was merely coincidental. Did that, in fact, get argued to the jury? Well, yes and no. No, because then the court instructed the jury that we had a duty to reinstate her, so that the judge injected into the case the FMLA claim that I don't believe should have been there in terms of the reinstatement. So the jury did decide in favor of the county that the county did not consider her FMLA leave as a negative factor. My argument was that that should be the end of the case. Why isn't it the end of the case that at 825.219.B, the regulation, which is binding, says the notice must explain the basis for the employer's finding that substantial and grievous economic injury will result? Yes. Why isn't that the end of the case? The letters don't. They just say ipsa dixit, but they don't explain the basis for that finding, and in fact the testimony shows there wasn't any economic analysis done. I respectfully disagree on two points. One is the notice said we're eliminating your position, and therefore it would be grievous economic harm to the county to bring you back to a position that didn't exist. And secondly, the testimony is in the record where the county determined that the cost of bringing her back to a position that didn't exist was over $100,000, including benefits, and would not make any economic sense and would be grievous economic harm. I see I'm down to about a minute and 30 seconds. Do you want to save that for a little? Yes, thank you. All right. Thank you. Please, the Court. My name is Steve Lacey. I represent the lanes in this matter. And I'm not going to argue the law so much, because as I hear the Court, I think the Court certainly has a handle on the law. I think the question really here is on a couple of factual issues that counsel, I think, misinterprets or perhaps sees differently than I do. And I did my best in the brief to try to point those out. First of all, there was no finding made at all by the county with respect to any kind of elimination of my client's position or the need to eliminate it until some two-and-a-half months after they gave her the notices and after she went on FMLA leave. There were these series of three letters, June and July of 2011, in which the HR department, the HR director, gave my client these notices that you have been discussing with defense counsel. And in that, they did say that she was a key employee, that they were eliminating her position, and that it was due to substantial egregious economic harm of some kind, I think they mentioned. However, that wasn't even true. There was nothing factual about that at the time. That was not at the time they gave her the notice. It was two-and-a-half months later? Right. Two-and-a-half months. They were going through a process to merge two departments in that area. And they had given over to a committee, which my client sat on, to determine how that restructure would occur. And that process lasted until the beginning of September of 2011, two-and-a-half months after she'd been on leave. There was testimony at trial by Jelaine Christian Stoker, who was the other main participant in that committee because she headed up the other department. And she was the one that ultimately became the director, the single director, if you will. And she testified at the time my client went on leave and at the time that all this occurred, they had made no decisions. They hadn't even considered whether or not my client's position would be eliminated. And they certainly hadn't made any decisions as to what kind of economic harm would occur if, in fact, her position was eliminated. And those decisions did not come down until a letter was issued on, like, the last day of August of 2011. And then a decision or a recommendation was made to the county commissioners of Grant County on, like, September 3rd. I'm confused about why this matters. As to what to do about the restructure. Does FMLA require that the decision be made before the leave? I'm not sure why this matters. How could they explain to her the basis why eliminating her position was going to cause grievous economic harm if they hadn't even decided to eliminate her position yet and they hadn't made any consideration of what the economic repercussions of that would be when the notices went out to her in June and July? They hadn't done that work. And, in fact, they never did that work. They never did any work amongst their committee or any of the department's heads or the commissioners themselves to determine specifically what the economic harm would be if they were to retain my client as an employee of the county, either in her position or in a substantially equivalent position. They never did it. And this is why the key employee instruction wasn't given? Well, that was my argument on summary judgment as to why summary judgment shouldn't be rendered against my client. When we got to trial, the court didn't have to go there because he said, hey, I find the notice to be defective, and if the notice is defective, then they've lost their key employee defense, so why should we give that instruction? And I, in my brilliance, I guess, said, well, you know, I'm really hung up on this grievous economic harm business. I really want to... You wanted it initially, right? I wanted it. I wanted to talk to the jury and explain to them that there never was a decision on grievous economic harm, nor there never was any calculation of what that harm would be at any time by the county, and therefore I felt they couldn't comply with the statute, not the regulation, the statute, which is 29 U.S.C. section 2614 B.1, which specifically states that deny... And it's talking about key employees, and I think... Okay, back up just a second. We admit she was a key employee. We always admitted she was a key employee. Key employees are established just by where they are in the hierarchy of the pay scale of a county. If they're in the top 10%, they're key by definition. That doesn't mean you can just automatically lay them off or not restore them to a position or equivalent position. That's what counsel kept being, frankly, hung up on during this whole case. He thought, well, once she's a key employee, our obligations are over. That's not true. The statute says that a highly compensated employee or key employee can be denied reinstatement, but only if you meet three conditions, and the first condition is that denial of restoration to the same or an equivalent position is necessary to prevent substantial and grievous economic injury to the operations of the employer. That's not a question of, well, we're saying it's going to give us an economic problem. There actually has to be established that that is true. It is necessary to prevent substantial and grievous harm, not that the county says it's necessary. So even if the county gives their notice that says it's necessary to prevent grievous economic harm and substantial economic harm, I still have the ability as counsel for the employee to challenge that and say there was never any finding, there was never any determination, and in fact it didn't cause any economic harm, any economic harm, and that's what I was arguing on summary judgment. Does it matter incidentally, and if not, why not, that we have this August 28, 2009 letter from Grant Integrated Services that says the gross savings to park by eliminating this position is $104,000. Forty percent of the salary will go toward the new finance director. Sixty percent of the salary will be saved by eliminating this position. I thought it mattered when we were heading into the trial because I had determined that if you took the part of the financial director's pay, that they were including that $140,000, $104,000, and you subtracted that from the equation because they're actually saving that amount of money or paying it over to pay a different position, that they might have the argument that, but of course this argument didn't arise until August 28th, okay. Way after they gave the notice. This analysis is not in the notice to the plaintiff. It couldn't have been because it's August 28th, and the notices went out in June and July. Let me give you a hypothetical. Suppose that they had stapled this letter from Grant Integrated Services to, I think it was the June notice that you're not going to get rehired. Yeah. And this letter would say basically county's going to save $40,000 by not taking it back. Why wouldn't that be enough of an analysis to show substantial and grievous economic harm? This is a hypothetical. Judge, for the same reasons that you were talking about a few minutes ago, for $40,000 savings to a county the size of Grant County where the money's not even coming from the county but it's coming from a state grant. $30 million budget state grant? Well, I think the $30 million is this county's budget. This department of that county operated almost fully on a state grant. So the $40,000 wouldn't come out of the county's budget. It wouldn't even come out of the county's budget. So I was going to go argue to the jury that, hey, this doesn't constitute any kind of substantial and grievous economic loss, but I would agree that they had gotten closer to meeting the terms of the notice that they could have stapled that in June and said, well, here's the amount of money that we'd lose if we bring you back. The problem is they couldn't because when they gave her the notices in June and July, they hadn't made that calculation or that determination or even the decision to lay her off. Don't they also have to consider her for a similar position? Yes, and that's the issue on which the case went to the jury. I lost on the other issue, which was whether or not they laid her off because she took FMLA leave. And I was allowed to argue, and so was counsel to the jury, that, in fact, there were positions available that she could have been placed in and that they didn't and that they still had that obligation. And, of course, my position has always been, and that's always been my understanding since I started doing FMLA law 15 years ago, is that if you have a key employee and you don't meet the terms of the statute, which would allow you to not automatically reinstate them, that then they become like any other employee and you still have the obligation to bring them back if you have a position to bring them back to. So when they got to, let's suppose, and I think this is actually how the jury looked at it, let's suppose that in the course of their analysis through the summer, they did decide to eliminate her position. I argued at trial that they really didn't, that it was a subterfuge. But let's suppose the jury didn't accept that, and I think they might not have. I was arguing that this financial director position that they retained in which they hired an outsider to fill should have been given to my client because she had the background to do that job. In fact, she'd done financial work for the county before she took the job as director. And I think the jury accepted that and said they should have brought her back to that position. That's what I think happened. Let me ask you to help me with something in the record. In the court's post-trial motion order, with regard to the liquidated damages issue, the district judge said that Ms. Heckler's testimony at trial was different than her testimony before Judge Succo and as submitted in her declaration in opposition to plaintiff's post-trial motions. This goes to the issue of whether the county carried its burden of demonstrating good faith. In what way was her testimony materially different? You're going to have to base this on my recollection because I tried both cases. But my recollection is, and I believe this is accurate, that at the first trial and earlier in this case, she testified that she didn't know that the county had any obligation to reinstate to a substantially similar position. And in this case, it was like that. In the previous case, she said she did know that and that she'd applied it correctly. In this case, she ended up testifying that she didn't even know they had that obligation. I see. So that's what the district court was referring to when it found that there was really no reasonable grounds for believing that the action... And she also testified that she was a semi-expert on FMLA, that she'd studied it upside and downside and was actually responsible for its application at the county. And the court did not, apparently, at least I didn't find that. Frankly, I thought anybody that had any passing acquaintance with how the FMLA is applied would never have taken the position that she took, that you could simply call somebody a key employee and thereafter make no attempt whatsoever to determine whether there were any substantially equivalent jobs available for them at any time. I thought in the earlier case she had testified that she hadn't done any research before they made the decision. She also did that. There were a couple of areas where I found her testimony between the two cases to be quite inconsistent. All right. Thank you. Any other questions? Thank you very much. You bet. Just a couple of things. First of all, the problem with the whole key employee thing and the economic harm is that the jury never got the opportunity to hear and decide that issue. Since the court didn't instruct on that. And the issue we have is sort of the old fireman on the train. In other words, we're going to bring the director back to a position that the director had no longer existed, and we have an employee who... But she could have been in an equivalent position or a similar position, right? At the point, I don't believe there was, and I believe because she was a key employee that there was no duty to put her in an equivalent or similar position, which is a whole rub. The court asked where I had accepted to the instructions, and at page 13 of my brief, I set that out, which is in the record at 593, where I indicated that the entire... Why would a key employee not be entitled to an equivalent position if there was one? Because the statute says that they're not. The statute says that they're a key employee and you meet the standards. I missed the language. Just tell me where to look. Well, the regulations that define key employee indicate that there's no duty of the employer to reinstate the key employee to any position. You understand. I've got the statute and regs here, and I'm just trying to find it. Okay. In six seconds, I probably can't direct the court to that. It's in the briefing. On the damages issue, I'd simply like to say that I think the good faith of the county in the jury's verdict indicating that FMLA leave was not a basis for their decision making and that they firmly and honestly believe she was a key employee and they had no duty to reinstate her, and therefore I think the court's findings were not supported by the jury's determination. I'm looking at page 593, and it seems to be saying that you think that the restoration claim and the interference claim are the same claim. Same claim. But it doesn't say, I mean, it says that you think Instruction 2 is a correct statement of law. You're not quarreling with that. I don't see anything here that says that you are arguing that they need to give. There's nothing about needing to give the key employee instruction if any of Instruction 2 is given. What I was telling the court was that the key employee or the restoration claim and the interference claim are the same claim and they should be handled in the interference claim instruction, and I accepted to all of the Sub 2 instructions, Number 2 instructions, that were outside of the interference claim. Now, it was unartful, I agree, but I think it was consistent with the position we had maintained throughout the entire trial. The verdict also broke it into two separate issues. Did the court prepare the verdict for the jury or did the parties stipulate to that? The court prepared the verdict form, as I recall. Did you object to the form of the verdict form? I don't recall on the record, but I accepted the form of the verdict. I think at that point the die were cast. All right. You're over time, but we thank you very much for your argument. We thank both sides. The matter is submitted for decision. Thank you.
judges: Kleinfeld, Nguyen, Friedland